IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JAMES GLENN BARLOW,<br><br>         Petitioner,<br><br>vs.<br><br>TAUESE VA'AOMALA SUNIA, et al.,<br><br>         Respondents. | CIVIL NO. 18-00423-JAO-KJM<br><br>**ORDER GRANTING RESPONDENTS' MOTION TO DISMISS AND TRANSFERRING PETITION FOR WRIT OF HABEAS CORPUS** |

**ORDER GRANTING RESPONDENTS' MOTION TO DISMISS AND TRANSFERRING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner James Glenn Barlow ("Petitioner") filed a habeas corpus petition, arguing his detention in American Samoa is unlawful because it stems from a conviction in the High Court of American Samoa that violated his rights under the United States Constitution. Respondents Tauese Va'aomala Sunia ("Sunia") and Soliali'i Falepo ("Falepo") (collectively, "Respondents") move to dismiss the petition, arguing that the Court lacks personal jurisdiction and subject matter jurisdiction, and that the District of Hawaii is an improper venue. For the reasons stated below, the Court GRANTS the motion, DISMISSES Respondents, and

TRANSFERS the petition to the United States District Court for the District of Columbia.

## I.    BACKGROUND

To resolve Respondents' motion, the Court must address how procedural rules governing habeas corpus relief in federal district court apply to a petitioner incarcerated in American Samoa, an unincorporated territory without Article III courts whose judicial system is *de jure* overseen by the Secretary of the Department of the Interior.  The question appears to be one of first impression across all federal courts despite American Samoa's status as a United States territory for over a century.[1]  At this stage, where jurisdiction and venue are at issue, a robust discussion of the judicial system in American Samoa will help frame the issues, and a brief discussion of Petitioner's claims on the merits will suffice.

### A.    Facts

#### 1.    American Samoa's Judicial System

American Samoa is an unincorporated territory of the United States.  *See* 48 U.S.C. § 1661.  It has no district court and is not part of the District of Hawaii.  *See* 28 U.S.C. §§ 81-144.  Instead, in relation to American Samoa, Congress directed:

> Until Congress shall provide for the government of such islands,
> all civil, judicial, and military powers shall be vested in such

---

[1] *See Tuaua v. United States*, 788 F.3d 300, 302 (D.C. Cir. 2015).

> person or persons and shall be exercised in such manner as the President of the United States shall direct; and the President shall have power to remove said officers and fill the vacancies so occasioned.

48 U.S.C. § 1661(c). Originally under the control of the Navy, the President eventually delegated this authority to the Secretary of the Interior (the "Secretary") pursuant to an Executive Order. *See* Exec. Order No. 10,264, 16 Fed. Reg. 6,417 (June 29, 1951). The Executive Order broadly authorizes the Secretary to "take such action as may be necessary and appropriate, and in harmony with applicable law, for the administration of civil government in American Samoa." *Id.* The budget for the territory, and all laws passed by the territorial legislature—including those relating to the organization of the courts—must be submitted to the Secretary for approval. *See Corp. of the Presiding Bishop of the Church of Jesus Christ of the Latter-Day Saints v. Hodel*, 830 F.2d 374, 376-77 (D.C. Cir. 1987) ("*Hodel II*"), *aff'g* 637 F. Supp. 1398 (D.D.C. 1986) ("*Hodel I*"). "The Secretary of the Interior, therefore, possesses plenary authority over the judicial system of American Samoa."[2] *Id.* at 376; *see also Tuaua*, 788 F.3d at 302.

---

[2] For this reason, the courts of American Samoa have been described as Article IV courts. *See Meaamaile v. American Samoa*, 550 F. Supp. 1227, 1235 (D. Haw. 1982) ("The courts established for American Samoa are not Article III courts, but, rather, *legislative* courts created by virtue of the general right of sovereignty which exists in the government and by virtue of Article IV, Section 3, Clause 2 of the United States Constitution, which enables Congress to make all needful rules and

The Constitution of American Samoa, which the Secretary approved,[3] provides: "The judicial power shall be vested in the High Court, the District Courts, and such other courts as may from time to time be created by law." Rev. Const. Am. Sam. art. III, § 1. The Secretary appoints the Chief Justice of American Samoa and the Associate Justices of the High Court. *See id.* art. III, § 3. "The High Court also includes Associate Judges who are appointed by the territorial Governor and confirmed by the territorial Senate" who "are typically traditional Samoan leaders with knowledge of local customs." *Hodel II*, 830 F.2d at 377 (footnote and citation omitted).

As relevant here, the trial division of the High Court has jurisdiction over felony criminal cases, and the Appellate Division of the High Court can review those decisions on appeal. *See* Am. Samoa Code §§ 3.0208(a)(2), (c); *id.* § 3.0221; *id.* § 46.2402; *id.* § 46.2403. "Section 3.0220 of the American Samoa Code provides that ordinarily appeals to the High Court 'shall be held before 3 justices and 2 associate judges,' but if there is a difference of opinion among the members of the panel, 'the opinion of 2 of the justices shall prevail.'" *Hodel II*, 830 F.2d at 386 (quoting Am. Samoa Code §§ 3.0220, 3.0221).

---

regulations respecting the territory belonging to the United States." (citations omitted)).

[3] Any amendments to the Constitution of American Samoa may be made only by Act of Congress. 48 U.S.C. § 1662a.

The Constitution of American Samoa also provides for the writ of habeas corpus, specifically that it "shall be granted without delay and free of costs" and that it "shall not be suspended except by the Governor and then only when the public safety requires it in case of war, rebellion, insurrection or invasion." Rev. Const. Am. Sam. art. I, § 7.

There is no right to appeal a conviction from a court in American Samoa to an Article III court. *See United States v. Lee*, 159 F. Supp. 2d 1241, 1245 (D. Haw. 2001); *Hodel II*, 830 F.2d at 387 (holding that lack of right of direct appeal to Article III court in civil matter did not violate due process). Individuals convicted in the American Samoa High Court have, however, sought redress against the Secretary in Article III courts. *See, e.g.*, *King v. Morton*, 520 F.2d 1140 (D.C. Cir. 1975); *King v. Andrus*, 452 F. Supp. 11 (D.D.C. 1977). In *King v. Morton*, the plaintiff argued he was denied the right to trial by jury after being convicted of tax evasion in American Samoa. 520 F.2d at 1142-43. Upon remand in *King v. Andrus*, the district court agreed, enjoining the Secretary of the Interior from: (1) enforcing the provisions of the American Samoa Code that denied the right to a jury trial in criminal cases, and (2) enforcing any criminal conviction against the plaintiff obtained without giving him the right to a jury trial. 452 F. Supp. at 17.

Federal courts have interpreted *King v. Morton* as "necessarily stand[ing] for the proposition that the Secretary has the authority to review decisions of the High

Court to assure they comply with any standards of the United States Constitution found to apply to American Samoa." *Hodel I*, 637 F. Supp. at 1413 n.29 (citations omitted). The Secretary has likewise acknowledged his or her power to intervene and review decisions of the High Court—even if he or she chooses not to exercise this power. *See Hodel II*, 830 F.2d at 376, 378-79.

### 2. Petitioner's § 2241 Habeas Petition

With this background in mind, the Court turns to Petitioner's request for federal habeas relief. Petitioner is an American citizen currently incarcerated in the American Samoa Territorial Correctional Facility. ECF No. 1 ("Petition") ¶ 4(a). Respondent Sunia is the Warden of that facility (the "Warden"). *Id.* ¶ 4(b)(i). Petitioner also named Respondent Falepo (the "Director"), alleging he is the Director of the American Samoa Government Office in Hawaiʻi, which is the "liason (sic.) for all ASG business in the Aloha State." ECF No. 15 at 6 (alteration in original) (emphasis and footnote omitted).[4]

---

[4] Petitioner relies on a website for the Office of the Governor for American Samoa. *See* ECF No. 15 at 6 & n.9; Petition ¶ 4(b)(ii) (citing https://www.americansamoa.gov/office-of-the-governor). The Governor is the head of the executive branch of the American Samoa Government ("ASG"). *See* Rev. Const. Am. Sam. art. IV, § 2. As of the date of the Court's Order, the Governor's website indicates that the Director of the American Samoa Office in Hawaiʻi is Bonneylei Liu Paʻuulu—not Respondent Falepo. The Court will continue to refer generally to the "Director" because, if someone else now holds that position, he or she would automatically be substituted as the named respondent. *See* Fed. R. Civ. P. 25(d).

Petitioner was convicted after a bench trial in the High Court of American Samoa of various charges, including sodomy with a minor, deviate sexual assault in the first degree with a minor, sexual abuse in the first degree with a minor, furnishing pornographic materials to a minor, aiding a minor to possess or consume alcohol, endangering the welfare of a minor, driving under the influence of alcohol, and careless driving. Petition ¶ 2(a). He received a term of 24 years of imprisonment. *Id.* After his motion for reconsideration was denied, ECF No. 14-2, Petitioner appealed his conviction to the Appellate Division of the High Court of American Samoa, which affirmed his conviction and denied his motion for a rehearing. Petition ¶ 2(b); ECF No. 14-3. Petitioner did not ask the Secretary to intervene, nor did he seek territorial habeas relief.

Instead, Petitioner seeks federal habeas relief under 28 U.S.C. § 2241, arguing various components of his trial violated his rights under the Fifth and Sixth Amendments. He first argues the prosecution failed to disclose critical exculpatory evidence and that the trial court improperly restricted his right to cross examination and access to critical documents. Petition ¶ 6(a). He next argues he was denied the right to jury trial because, although his lawyer informed him he should waive his right to a jury trial, any such waiver was not knowing and voluntary. *Id.* ¶ 6(b). He also raises an ineffective assistance of counsel claim based on his counsel's failure to object at trial and on appeal to the denial of his right to a jury

trial, further claiming his right to a speedy trial was violated.  *Id.* ¶ 6(c), (d).

**B.    Procedural History**

Petitioner was convicted in the High Court of American Samoa in July 2014. *Id.* ¶ 2(a).  The Appellate Division of the High Court of American Samoa affirmed his conviction in November 2017 and denied his motion for rehearing in January 2018.  *Id.* ¶ 2(b).  In October 2018, Petitioner filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 in the District of Hawaii.  ECF No. 1.

The Court issued an Order to Show Cause directing Respondents to show cause why the petition should not be granted and ordering Respondents to file either an Answer or a dispositive motion.  ECF No. 12.  Respondents filed a motion to dismiss the petition for lack of personal jurisdiction and subject matter jurisdiction, and on the grounds that the District of Hawaii is an improper venue. ECF No. 14.  Petitioner opposes the motion.  ECF No. 15.

## II.    DISCUSSION

The Court concludes that it lacks jurisdiction over a proper respondent and so dismisses Respondents, but also concludes that the interests of justice warrant transferring the petition to the District of Columbia.

**A.    The Type of Habeas Petition and Rules Governing It**

The parties dispute the applicable statutory authority for the petition, with Petitioner requesting relief under 28 U.S.C. § 2241(c) and Respondents arguing he

may only seek relief under 28 U.S.C. § 2254.

Section 2241 contains the general statutory grant of authority to district courts to afford habeas relief. *See White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010). At a basic level, then, § 2241 authorizes the Court to grant habeas relief to Petitioner, an American citizen incarcerated within an unincorporated territory of the United States, if he can show that "[h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3); *see Rasul v. Bush*, 542 U.S. 466, 478-84 (2004) (noting that "persons detained outside the territorial jurisdiction of any federal district court no longer need rely on the Constitution as the source of their right to federal habeas review" and holding that noncitizens detained at Guantanamo Bay could seek habeas relief under § 2241); *Boumediene v. Bush*, 553 U.S. 723, 771 (2008) (holding that noncitizens detained by United States government in territory over which another country maintains *de jure* sovereignty could invoke the Suspension Clause).

Section 2254 limits the authority granted by § 2241—but only in certain types of habeas proceedings.[5] *See White*, 370 F.3d at 1006. In *White*, for example,

---

[5] The same is true of § 2255—although neither party contends it applies here. That provision covers individuals in custody "under sentence of a court established by Act of Congress" and requires those individuals to bring the petition in "the court which imposed the sentence." 28 U.S.C. § 2255(a). Congress did not

9

the Ninth Circuit held that if an individual is in custody pursuant to a state court *judgment*, and not in state custody for a different reason, e.g., pre-conviction custody, custody awaiting extradition, or other forms of custody possible without a conviction), the petitioner must proceed under and comply with the requirements of § 2254.[6] *See id.* *White* is of little assistance here, though, because there is no dispute that Petitioner is in custody pursuant to a conviction and judgment. Rather, the question is whether it can be characterized as a *state* judgment and Petitioner's incarceration defined as *state* custody. Some authority suggests the answer is no— and thus that only § 2241 applies. *Cf. King v. Morton*, 520 F.2d at 1146 (stating that jurisdiction for action against Secretary objecting to deprivation of jury trial under *laws of American Samoa* and *regulations of the Secretary* could not be based on 28 U.S.C. § 1343(3), "which applies to actions to redress the deprivation of fundamental rights under color of *State law*" (emphasis added)). Indeed, when Congress has wanted to treat American Samoa as a "State" in other contexts, it has

_____

establish the courts of American Samoa and the District of Hawaii did not impose Petitioner's sentence.

[6] The distinction ensures proper deference is afforded to the States and the legitimacy of their judicial proceedings. *See Dominguez v. Kernan*, 906 F.3d 1127, 1135 (9th Cir. 2018) ("Congress placed these additional limits on petitions under § 2254 because a state court judgment 'carries a heightened presumption of legitimacy.'" (citation omitted)).

said so explicitly. *See, e.g.*, 42 U.S.C. § 1301(a)(1) (providing that term "State" includes American Samoa for certain subchapters).

Still, answering this question definitively at this juncture appears premature. The parties dispute which statute controls under the belief that an exhaustion requirement applies only to petitions brought under § 2254. But, "[e]ven in cases brought under § 2241, exhaustion is required." *Dominguez*, 906 F.3d at 1135 n.9 (noting the exhaustion requirement under § 2241 is judicially created rather than statutory). Thus, exhaustion will apply regardless.

Relevant here, the Ninth Circuit has applied § 2254 to petitioners incarcerated within a United States territory pursuant to a conviction from a territorial court—essentially treating such petitioners as equivalent to state prisoners. *See White v. Klitzkie*, 281 F.3d 920, 923 n.3 (9th Cir. 2002) (citing *Aldan v. Salas*, 718 F.2d 889, 891 (9th Cir. 1983)). In *Aldan*, for example, the Ninth Circuit remanded with instructions that the district court should dismiss a federal habeas petition without prejudice for failing to exhaust territorial remedies, noting that "the requirement of exhaustion of remedies exists to avoid an adjudication of territorial criminal convictions by federal authorities, wherever possible, to the end that comity may be furthered and potential conflict avoided." *Aldan*, 718 F.3d at 891 (citations omitted). *Aldan*, in turn, relied on *Pador v. Matanane*, 653 F.2d 1277, 1279 (9th Cir. 1981), which explained that the comity

concerns underlying the *state* exhaustion requirement apply with equal force to justify a *territorial* exhaustion requirement:

> Although Guam is a territory rather than a state . . . , it remains true, as it is in the case of states, that ordinarily it is better to require the exhaustion of local remedies before entertaining and issuing the writ of habeas corpus. Attention to constitutional duties will remain sharp so long as responsibility for their enforcement remains undiluted.

*Pador*, 653 F.2d at 1279. *Pador*, however, noted that the exhaustion requirement was *not* rooted in § 2254 whose exhaustion requirement is "limited to 'courts of the State,'" but instead, "principles of comity and efficiency supporting the exhaustion requirement that antedate the statute and of which 28 U.S.C. § 2254(b) was but a codification." *Id.* at 1279 n.1. Thus, while there may be dispute regarding the source of an exhaustion requirement, there can be no doubt it applies with equal force to territorial remedies.[7] And while American Samoa differs from

---

[7] The shift from *Pador* in 1981 to *White* in 2002 may be explained by the 1984 amendment to Guam's Organic Act, which provides that prisoners from Guam's territorial courts should be treated like state prisoners for habeas purposes. *See* 48 U.S.C. § 1424-2 ("The relations between the courts established by the Constitution or laws of the United States and the local courts of Guam with respect to . . . the issuance of writs of habeas corpus . . . shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings."). Similar provisions exist for the Virgin Islands, 48 U.S.C. § 1613, and Northern Mariana Islands, 48 U.S.C. § 1824. American Samoa has no organic act, meaning there is no similar provision—which also tends to support Petitioner's position that the proper review here is under § 2241.

Guam in important respects, e.g., it is an unincorporated territory with neither an Organic Act nor a district court located within its territory),[8] the Court can discern no reason why these distinctions would justify a different outcome when assessing the need to exhaust territorial remedies based on more fundamental principles of comity.

Still, even if Petitioner is required to exhaust his territorial remedies, the Court nonetheless believes that resolution of whether he exhausted those remedies (and its precedent—whether that exhaustion requirement is statutory under § 2254 or judicially-created under § 2241) should await the naming of a proper respondent in the proper venue.

This is because the exhaustion doctrine requires state prisoners to "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Thus, the question is not simply whether a certain territorial remedy is *available*; instead, the question is whether that available remedy is part of the territory's ordinary appellate review procedure. *See McMonagle v. Meyer*, 802 F.3d 1093, 1099 (9th Cir. 2015) ("California misdemeanants therefore should not be required to file a habeas petition before the state Supreme Court in order to exhaust state court remedies for claims already

---

[8]  *See, e.g.*, 48 U.S.C. §§ 1424, 1424-2, 1424-3.

considered and rejected on direct review."); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999) (concluding that except in life-sentence or capital cases, claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them).

Here, neither party satisfactorily addresses how *American Samoa* views exhaustion within its court system—nor even how the Secretary might view exhaustion. For example, Respondents state only that a territorial habeas petition is *available* and that appeal to the Secretary is *available*. ECF No. 14 at 12-13. Even so, this fails to address whether either *available* remedy is part of the territory's ordinary appellate review process. *Compare O'Sullivan*, 526 U.S. at 844 ("We have also held that state prisoners do not have to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past." (citation omitted)), *with Hodel I*, 637 F. Supp. at 1413 ("[A]ll parties agree that the Secretary has never of his own accord overruled a decision by the Samoan judiciary." (footnote omitted)). The Court therefore concludes that it is more prudent to decline to definitively resolve the question of exhaustion at this

juncture.  This outcome also makes sense because, as discussed below, the Court

lacks jurisdiction over a proper respondent.[9]

## B.    Personal Jurisdiction Over the Named Respondents

A district court may grant the writ only within its "respective jurisdiction[.]"

28 U.S.C. § 2241(a).  Whether this Court has jurisdiction over the present habeas

petition breaks down into two related sub-issues:  (1) identifying who is the proper

respondent, and (2) determining whether the District of Hawaii has jurisdiction

over him or her.  *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004).  Because the

Court determines Petitioner has failed to name a proper respondent over which the

Court has jurisdiction, the petition must be dismissed or transferred.

### 1.    Whether the Warden and Director Are Proper Respondents

An American citizen detained within the United States must generally name

his immediate custodian as the respondent and file in the district of confinement.

---

[9]  It bears noting, however, that another federal court has suggested that exhausting territorial remedies in American Samoa requires only a direct appeal to the highest court.  *See King v. Morton*, 520 F.2d at 1144 ("Exhaustion is not at issue here, since King has already appealed his conviction to the highest court in American Samoa.").  Further, in a case Petitioner relies on here, the Secretary himself seemed to agree with *King v. Morton* that exhaustion entails only appeal to the highest court in American Samoa.  *See* Def.'s Resp. to Order to Show Cause 7, ECF No. 16, *in Majhor v. Norton*, Civil Action No. 07-1465 (RBW) (D.D.C.) (Sept. 25, 2007) ("In *King*, plaintiff had already appealed his conviction to the highest court in American Samoa prior to filing suit in the United States District Court for the District of Columbia. . . .  Plaintiff is required to exhaust his local remedies before proceeding in federal court.  *King*, at 1144.").

*See Gherebi v. Bush*, 374 F.3d 727, 739 (9th Cir. 2004) (citing *Padilla*, 542 U.S.

426). This rule – "the immediate custodian rule" – applies regardless of whether

the petition is brought under § 2241 or § 2254. *See Padilla*, 542 U.S. at 439 ("In

challenges to present physical confinement, we reaffirm that the immediate

custodian, not a supervisory official who exercises legal control, is the proper

respondent."); *see also id.* at 450 n.18; 28 U.S.C. §§ 2241, 2242, 2243; Rules 1(b)

& 2(a) of the Rules Governing § 2254 Cases in United States District Courts

(petitioner must name state officer with custody over them, and district court may

apply this rule regardless of whether the petition is brought under § 2254). Here,

the Warden is Petitioner's immediate custodian, and so a proper respondent.

The Director, however, is not a proper respondent. Petitioner alleges the

Director in Hawaiʻi acts as the Warden's agent. Petition ¶¶ 4(b)(ii). In opposing

the motion, though, Petitioner can only *speculate* how the Director in Hawaiʻi

*might* interact with the Warden in American Samoa, e.g., coordinating food

provisions for the correctional facility or the Warden's travel to or through Hawaiʻi

for training. ECF No. 15 at 4-6. Even assuming all this is true, it does not indicate

that the Director is acting as the Warden's *agent*. More importantly, there is no

connection to Petitioner's physical custody, nor even the criminal proceedings that

led to his incarceration. Respondents deny that the Director had any involvement

with either, and further deny that the Director has authority to produce Petitioner in

court in Hawaiʻi or compel the Warden to undertake any action with respect to the Petitioner. ECF No. 14 at 5-6, 8. This is fatal to Petitioner's argument that the Warden is a proper respondent. *See Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 494-95 (1973) (explaining that the writ acts upon the person who holds petitioner in alleged unlawful custody, so a court issuing the writ must have jurisdiction over the custodian who can be compelled to bring the petitioner before the court or release him from custody outright).

The Supreme Court has permitted a habeas petitioner to proceed against a respondent under an agency theory; however, that case is inapposite. *See Strait v. Laird*, 406 U.S. 341 (1972). In *Strait*, the petitioner was not in physical custody, but instead a conscientious objector seeking discharge from the Army. *See id.* at 345-46. Although his nominal custodian, i.e., the keeper of Army records, resided in Indiana, the petitioner was allowed to file against him in California because the custodian was deemed to be present in California through officials there that processed the petitioner's discharge request. *See id.* Thus, *Strait* stands for the proposition that a petitioner not in physical custody may file against his custodian outside the district where that custodian resides if the custodian's agents are acting within the district where the petition is filed. It says nothing about naming an individual with a tangential relationship to the immediate custodian and no direct relationship to petitioner's physical custody. Thus, the Court concludes only the

Warden is a proper respondent for Petitioner's habeas petition and DISMISSES the action against the Director.

### 2. Whether the Court Has Personal Jurisdiction over the Warden

After naming the immediate custodian, a petitioner must generally file in the district of confinement. *See Gherebi*, 374 F.3d at 739. In the usual scenario where a citizen: (1) is physically confined in the United States, (2) names his immediate custodian as respondent, and (3) files in the district of confinement, there is no doubt that the district court can exercise jurisdiction over that custodian residing within its district. Here, though, Petitioner cannot file his petition against the Warden in the district of confinement because Congress has neither created a federal district court in American Samoa nor directed an existing American Samoa court to assert jurisdiction over federal habeas petitions. *See United States v. Lee*, 472 F.3d 638, 643 (9th Cir. 2006).[10] Given this wrinkle in the American Samoa court system, Petitioner argues that the District of Hawaii has "the most immediate connection" to the Respondents, and so filed his petition here. ECF No. 15 at 20.

Both sides analyze whether the Court can exercise jurisdiction over the Warden based on the "long arm" provisions of HRS § 634-35(a)(1), (a)(3). ECF

---

[10] *Lee* details the handful of instances where Congress has explicitly granted the High Court jurisdiction over certain matters. *See* 472 F.3d at 643 (citing, e.g., 7 U.S.C. § 2146(c) (granting "the highest court of American Samoa" jurisdiction over cases involving the "transportation, sale, and handling of certain animals")).

No. 14 at 7-8; ECF No. 15 at 1-7; ECF No. 23 at 2-4. The Court doubts this

approach is legally sound because a district court may only grant a writ within its

jurisdiction. In *Padilla*, the Supreme Court rejected the argument that it had

"authorize[d] district courts to employ long-arm statutes to gain jurisdiction over

custodians who are outside of their territorial jurisdiction." 542 U.S. at 445

(citations omitted); *see also id.* at 447 (explaining that applying long-arm

jurisdiction would conflict with the relevant habeas statutes, encourage forum-

shopping, and risk creating overlapping jurisdiction among various district courts).

Instead, the Supreme Court noted that its prior case law confirmed that "the

custodian's absence from the territorial jurisdiction of the district court is fatal to

habeas jurisdiction." *Id.* at 445 (citation omitted). Here, that means the Court

lacks jurisdiction because: (1) the Warden, who *is* Petitioner's custodian, is *not*

present within the District of Hawaii; and (2) the Director, who *is* present within

the District of Hawaii, is *not* a proper respondent because he is not the Petitioner's

custodian.[11]

---

[11] For completeness, applying the traditional personal jurisdiction analysis would
produce the same result. Whether the Court has jurisdiction over the Director is
immaterial because he is not a proper respondent for this habeas petition, as
discussed above. Any jurisdiction over the Warden must be based on specific
jurisdiction, which necessarily fails. *See Schwarzenegger v. Fred Martin Motor
Co.*, 374 F.3d 797, 801-02 (9th Cir. 2004) (stating general jurisdiction requires
continuous and systematic contacts with state and mere purchases or doing
business with state is insufficient). Crucially, the Court cannot exercise specific

Again, a case like *Strait* is of no assistance to Petitioner. First, the Warden cannot be deemed to be present in Hawaiʻi through the Director because, as stated above, the Director is not an agent of the Warden and was not involved in Petitioner's underlying conviction or present custody. As the Supreme Court has also made clear in cases since *Strait*, in a case like this where the Warden has day-to-day control of a subordinate like Petitioner, the Warden is only subject to habeas jurisdiction in the district where he resides, i.e., American Samoa. *See Padilla*, 542 U.S. at 445; *see also Stokes v. U.S. Parole Comm'n*, 374 F.3d 1235, 1239 (D.C. Cir. 2004) ("[A] district court may not entertain a habeas petition involving present physical custody unless the respondent custodian is within its territorial jurisdiction." (citation omitted)).

---

jurisdiction over the Warden unless Petitioner's habeas claims arise out of the Warden's Hawaiʻi-related activities. *See id.*; *see also Cowan v. First Ins. Co. of Hawaii*, 61 Haw. 644, 649 n.4, 608 P.2d 394, 399 n.4 (1980) (interpreting Hawaii's long-arm statute, HRS § 634-35, to reach to the full extent permitted by the U.S. Constitution). Even if the Court assumes the Warden contacted officials in Hawaiʻi about food provisions for the correctional facility or flew to or through Hawaiʻi for general trainings or on other business, Petitioner's claims of unlawful confinement as a result of unconstitutional court proceedings in no way relate to those hypothetical connections between the Warden and Hawaiʻi. *See also* HRS § 634-35(a)(1), (a)(3) (provisions on which Petitioner relies, also requiring claims to arise out of defendant's transaction of business within Hawaiʻi or ownership or use of property in Hawaiʻi); Fed. R. Civ. P. 4(k)(1), (k)(2) (provisions on which Petitioner relies, which require court to have either general jurisdiction over defendant or require the exercise of jurisdiction to comport with the U.S. Constitution).

In sum, the Court concludes it cannot exercise jurisdiction over the only proper respondent, the Warden—meaning Petitioner may not seek habeas relief against him in the District of Hawaii. The Court therefore DISMISSES the action against the Warden.

## C.    Exception for Physical Custody Outside Territory of Any District Court

Although the Court concludes that seeking habeas relief in the District of Hawaii against the Warden is not proper, that does not mean a citizen incarcerated in American Samoa is left without redress. Instead, this case justifies application of one established exception to the immediate custodian rule, which applies when a citizen is confined outside the territory of any district court. *See Padilla*, 542 U.S. at 436 n.9, 447 n.16. "In such cases, [courts] have allowed the petitioner to name as respondent a supervisory official and file the petition in the district where the respondent resides." *Id.* at 447 n.16 (citing *Burns v. Wilson,* 346 U.S. 137 (1953) (courts-martial convicts held in Guam sued Secretary of Defense in the District of Columbia); *United States ex rel. Toth v. Quarles*, 350 U.S. 11 (1955) (court-martial convict held in Korea sued Secretary of the Air Force in the District of Columbia)).

Here, the Secretary is seemingly the only supervisory official found within any territory of any district court. *See Tuaua*, 788 F.3d at 302 ("The territory [of American Samoa] remains under the ultimate supervision of the Secretary of the Interior." (citation omitted)). As discussed above, the Secretary has plenary

authority over the judicial system of American Samoa.  He has the power to intervene and review decisions of the High Court.[12]  And, importantly, he can be (and has previously been) ordered to take appropriate measures to correct any constitutional deficiencies in his administration of the government of American Samoa—including with respect to individuals convicted in the courts of American Samoa in violation of their rights under the U.S. Constitution.  *See King v. Morton*, 520 F.2d at 1144 ("Clearly, the Secretary is within the geographical jurisdiction of the United States District Court for the District of Columbia, and that court is competent to judge the Secretary's administration of the government of American Samoa by constitutional standards and, if necessary, to order the Secretary to take appropriate measures to correct any constitutional deficiencies."); *King v. Andrus*, 452 F. Supp. at 12, 17 (ordering Secretary not to enforce certain rules and regulations or a conviction against plaintiff).

Because the Secretary appears to be the proper respondent, this means the District of Hawaii is not the proper venue for the present petition.  As discussed above, the Court may only grant the writ within its jurisdiction, it is undisputed the Secretary resides outside that jurisdiction in the District of Columbia, *see King v. Morton*, 520 F.2d at 1144, and it would be inappropriate for the Court to assess

---

[12]  As discussed above, though, this does not necessarily mean that appeal to the Secretary is required for exhaustion purposes.

whether it could exercise jurisdiction over the Secretary under the guise of any long-arm statute, *see Padilla*, 542 U.S. at 445, 447.[13]  Analogous case law in this Circuit further supports that the District of Columbia is the proper venue for Petitioner to seek habeas relief against the Secretary.  *See Gherebi*, 374 F.3d at 739 (noting that it "appear[ed] that the proper venue" for Guantanamo detainee's habeas petition against the President and Secretary of Defense was in the District of Columbia, citing cases brought against federal officials in that district, and so transferring case to that district).

In line with *Gherebi*, and other directives from the Ninth Circuit, the Court further determines that, rather than dismiss the petition, the interests of justice warrant transferring the petition to the District of Columbia under either 28 U.S.C. § 1631 or 28 U.S.C. § 1406(a) with the presumption that necessary amendments to perfect the form of the petition can be made in the District of Columbia upon transfer.[14]  *See Gherebi*, 374 F.3d at 739 & n.16.  The Ninth Circuit has explained

---

[13]  *See also Dunne v. Henman*, 875 F.2d 244, 248 (9th Cir. 1989) ("While 28 U.S.C. § 1391(e) provides for nationwide service of process on officers of the United States, that statute does not extend habeas corpus jurisdiction to persons outside the territorial limits of the district court." (citations omitted)).

[14]  Section 1631 permits transfer to cure jurisdictional defects.  *See* 28 U.S.C. § 1631.  Section 1406(a) permits transfer to cure a defect in venue.  *See* 28 U.S.C. § 1406(a).  A court may transfer under § 1406(a) only if it has subject matter jurisdiction over the action.  *See Hernandez v. Campbell*, 204 F.3d 861, 865 n.6 (9th Cir. 2000).  *Hernandez* might therefore suggest that § 1406(a) is inapplicable here because the Court lacks jurisdiction over a proper respondent and can only

that a court should *sua sponte* consider transfer under § 1631 if it lacks jurisdiction, the transferee court could have exercised jurisdiction when the action was filed, and transfer is in the interest of justice. *See Cruz-Aguilera v. INS*, 245 F.3d 1070, 1074-75 (9th Cir. 2001). In *Cruz-Aguilera*, the Ninth Circuit determined it lacked jurisdiction to consider on direct appeal a petition for review of an immigration court decision, and so construed it as a habeas petition, which it then transferred to the district court (given the Ninth Circuit lacked jurisdiction to hear the habeas petition in the first instance). *See id.* at 1073. In doing so, the Ninth Circuit noted that "[n]ecessary amendments to perfect the form of the habeas petition can be made in the district court upon transfer." *Id.* at 1073 n.2. There, the petitioner initially filed a petition for direct review of an agency decision and named only the agency as respondent—and so, presumably upon transfer, could amend the petition to name a proper habeas respondent, i.e., "the person who has custody over him." 28 U.S.C. § 2242. So, too, here, Petitioner can perfect the form of his petition in the District of Columbia upon transfer, i.e., by amending the petition to name the Secretary.

---

issue a writ within its jurisdiction. Still, in *Gherebi*—as here—, the petitioner was detained outside the territorial jurisdiction of any district court (at Guantanamo Bay) and the Ninth Circuit concluded it could nonetheless exercise jurisdiction to transfer the petition under § 1406(a) to the District of Columbia where a supervisory official was located. Thus, transfer under either statute seems appropriate here.

Other Ninth Circuit authority provides additional support that transfer is appropriate here *even if* Petitioner did not initially name a respondent over which the District of Columbia would have jurisdiction. *See Miller v. Hambrick*, 905 F.2d 259, 261-63 (9th Cir. 1990). In *Miller*, the petitioner's regular place of incarceration was Texas, but he was temporarily in custody in California to testify in a proceeding and so filed his petition in California and named his California custodian as respondent. *See id.* The California district court dismissed the I dpetition because petitioner should have filed in Texas. *See id.* The Ninth Circuit agreed that the proper venue for the petition was Texas, but nonetheless held the district court abused its discretion by dismissing the petition rather than transferring it to Texas under § 1631. *See id.* The Ninth Circuit remanded with instructions that the California district court transfer the petition to Texas— notably, saying nothing of the need for petitioner to amend the petition to name his Texas custodian prior to transfer. *See id.* The Court therefore follows *Miller* and transfers the petition to the District of Columbia with the presumption that the proper respondent can be named upon transfer.[15]

---

[15] In doing so, the Court has also considered whether transfer is appropriate despite not resolving whether the petition should be considered under § 2241 or § 2254, or whether Petitioner exhausted his territorial remedies. *See Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004) (concluding exhaustion under § 2241 is prudential); *Menendez v. Terhune*, 422 F.3d 1012, 1026 n.5 (9th Cir. 2005) (reaching merits despite questioning whether claim was exhausted under § 2254,

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Respondents' Motion,

DISMISSES Respondents from this action, and TRANSFERS the Petition to the

United States District Court for the District of Columbia.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, November 12, 2019.

Jill A. Otake
United States District Judge

citing pre-AEDPA law that exhaustion is not jurisdictional).  As stated above, the
Court determines that such issues are better resolved after transfer.  Despite the
Court's conclusion that Petitioner may not seek habeas relief against the Warden
and Director in the District of Hawaii and that transfer is in the interests of justice,
the Court further presumes that, if the newly named respondent upon transfer
(presumably, the Secretary) objects that he, too, is an improper respondent, he may
raise this and any other objection in the District of Columbia.  *Cf. Ex parte Hayes*,
414 U.S. 1327, 1328-29 (1973) (transferring petition of Army private stationed in
Germany whose commanding officer was in Germany to the District Court for the
District of Columbia because "others in the chain of command" were there—yet
still "recognizing, of course, that the District Court [for the District of Columbia]
has jurisdiction to determine the question of its jurisdiction").